UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-181-B-W |
| | ) | |
| JEFFREY EMERSON | ) | |
| | ) | |

**SENTENCING ORDER**

Jeffrey Emerson argues that the transcripts of two misdemeanor guilty pleas and corresponding convictions fail to demonstrate that he was either represented by counsel or advised properly of his right to counsel. He therefore contends that the two convictions should not count toward his criminal history computation under the United States Sentencing Guidelines. The Court finds to the contrary: the state transcripts establish that Mr. Emerson was in fact represented by counsel, and in any event, because silence or ambiguity does not prove constitutional infirmity in an otherwise regular proceeding, the Court counts the two misdemeanor convictions for sentencing purposes.

**I.     STATEMENT OF FACTS**

On November 24, 2009, Mr. Emerson pleaded guilty to a one count information charging him with conspiracy to possess with intent to distribute controlled substances in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A). *Minute Entry* (Docket # 10); *Information* (Docket # 4). On February 9, 2010, the Probation Office (PO) completed the Presentence Investigation Report (PSR). The PSR assigned one criminal history point to four of Mr. Emerson's prior state

convictions for a total of four criminal history points and a criminal history category of III. *PSR* ¶ 37.[1]

Mr. Emerson objects to the inclusion of his state misdemeanor convictions on October 7, 2003 and March 12, 2008 as part of his criminal history scoring. The PSR assigned Mr. Emerson one criminal history point for the October 7, 2003 state conviction of violating a condition of release on October 6, 2003. State Dkt. No. 2003-931; *PSR* ¶ 33. On October 7, 2003, Mr. Emerson appeared in Belfast District Court and was sentenced to two days in jail. *Id*.

The PSR assigned an additional criminal history point for the March 12, 2008 conviction of violating a condition of release on March 11, 2008. State Dkt. No. 2008-211; *PSR* ¶ 36. On March 12, 2008, Mr. Emerson appeared in Belfast District Court and was sentenced to 14 days in jail. *Id*.

Whether two criminal history points are assigned to these two state convictions is significant. If assigned, Mr. Emerson's criminal history category will be III, and he will be subject to a guideline sentence range of 135 to 168 months. If not assigned, Mr. Emerson's criminal history category will be II, and his guideline sentence range will fall to 121 to 151 months.[2]

---

[1] The first state conviction assigned a point was for cultivating marijuana. State Dkt. No. 2004-13; *PSR* ¶ 32. On March, 15, 2004, Mr. Emerson appeared in Belfast District Court represented by Christopher MacLean, Esq. and was sentenced to 7 days in jail and fined $1,000. *Id.* The third state conviction assigned a point was for violating a condition of release. State Dkt. No. 2006-881; *PSR* ¶ 35. On March 13, 2007, Mr. Emerson appeared in Belfast District Court represented by Attorney MacLean and was sentenced to 14 days in jail and fined $400. *Id.*

[2] Mr. Emerson could end up with three criminal history points. The PO did not assign any criminal history points to a June 27, 1996 conviction for operating under the influence, for which Mr. Emerson spent two days in jail. State Dkt. No. 96-1211; *PSR* ¶ 31. The four convictions that were counted involved sentences of less than sixty days and were assigned one point pursuant to § 4A1.1(c). Because the maximum number of points that can be assigned under § 4A1.1(c) is four, no points were, or could have been, assigned to this fifth conviction. U.S.S.G. § 4A1.1(c); *PSR* ¶ 31. Normally, if Mr. Emerson's other § 4A1.1(c) points were reduced to two, this fifth conviction would now be assigned a point.

However, because of its age, there is a question as to whether criminal points can be assigned to the June 27, 1996 conviction. Section 4A1.2(e)(2) of the United States Sentencing Guidelines states that convictions of less than one year and one month can only be assigned criminal history points if they occurred within "ten years of the defendant's commencement of the instant offense." Here, it is difficult to determine the precise start of the instant

On May 27, 2010, Mr. Emerson filed a Sentencing Memorandum, arguing that because he was not informed of his right to counsel during the proceedings in state court on his October 7, 2003 and March 12, 2008 state convictions, they cannot count towards his criminal history point total. *Def.'s Mem. Concerning Criminal History Computation* (Docket # 18) (*Def.'s Mem.*). On May 28, 2010, the Government responded. *Government's Mem. in Aid of Sentencing* (Docket # 20) (*Gov't's Mem.*). Sentencing is set for June 28, 2010. *Notice of Hearing* (Docket # 17).

### A. The October 7, 2003 Proceeding

On October 7, 2003, Mr. Emerson was arraigned before Justice John Nivison at the Belfast District Court in Maine on one count of violating a condition of release, a Class E misdemeanor. *Docket Record for Docket No. BELDC-CR-2003-00931* Attach. 1 (Docket # 20).[3] On the same day, Mr. Emerson entered a plea of guilty, was sentenced to Waldo County Jail for two days, and ordered to pay $10 to the Victims' Compensation Fund. *Id*. Before entering his guilty plea, Justice Nivison asked Mr. Emerson if he understood his rights:

> COURT: Jeffrey Emerson. Is Mr. Harrington - - has he spoken with these individuals? Would you get him, please?
> UNIDENTIFIED SPEAKER: Yes, I believe he has spoken to them.
> COURT: Mr. Emerson, do you understand the rights that were explained to you?
> JEFFREY EMERSON, THE DEFENDANT HEREIN: (No audible response)
> COURT: You do?
> MR. EMERSON: Huh?
> COURT: Do you understand the rights that were explained to you?
> MR. EMERSON: Yes.

---

offense. The PSR states that sometime in the spring of 2009, Richard Calligan, a co-conspirator, admitted that he and Mr. Emerson had been supplied drugs by Ralphy Dominguez for 30 months, placing the start of the offense sometime in mid-2006. *PSR* ¶ 7. The PSR also suggests that Mr. Emerson's state drug arrest and conviction in August, 2006 was related to the current offense. *Id.* ¶¶ 11, 34. The Court need not make a final determination at this time. Even if assigned three criminal history points, Mr. Emerson would still fall within criminal history category II and benefit from the corresponding drop in guideline sentence range.

[3] John Nivison, a Superior Court Justice, presided in district court pursuant to 4 M.R.S.A. § 121. *See United States v. Cameron*, 652 F. Supp. 2d 74, 76-77 (D. Me. 2009) (explaining the authority of Superior Court Justices to preside in District Court). Mr. Emerson makes no claim that Justice Nivison was acting without authority.

*Tr. of Oct. 7, 2003 Proceeding* Attach. 1 at 2:4-16 (Docket # 18) (*Tr. of Oct. 7, 2003*).

The record does not provide any additional information.

### B.     The March 12, 2008 Proceeding

On March 12, 2008, Mr. Emerson was arraigned before Judge Patricia Worth at the Belfast District Court in Maine on one count of violating a condition of release, a Class E misdemeanor. *Docket Record for Docket No. BELDC-CR-2008-00211* Attach. 2 (Docket # 20). On the same day, Mr. Emerson entered a plea of guilty and was sentenced to Waldo County Jail for fourteen days. *Id*. The $10 payment to the Victims' Compensation Fund was waived. *Id*. Before entering his guilty plea, Judge Worth questioned Mr. Emerson:

> COURT: Jeffery Emerson. I have one file for Mr. Emerson. This is CR-08-211. Mr. Emerson, good afternoon.
> JEFFREY EMERSON, THE DEFENDANT HEREIN: Good afternoon.
> COURT: Did Mr. Shehan tell you about your rights?
> MR. EMERSON: Yeah.
> COURT: Did you understand his explanation?
> MR. EMERSON: Yes.

*Tr. of Mar. 12, 2008 Proceeding* Attach. 2 at 2:4-10 (Docket # 18) (*Tr. of Mar. 12, 2008*).

The record does not reflect what rights Mr. Shehan explained to Mr. Emerson.

## II.     DISCUSSION

Mr. Emerson and the Government draw different conclusions from these two exchanges. Mr. Emerson argues that they establish that the "Defendant did not knowingly and voluntarily waive his right to counsel prior to entering his guilty pleas to those offenses." *Def.'s Mem.* at 1. Although acknowledging that he said in both proceedings that he understood the "rights that had been explained," Mr. Emerson argues that the record is silent as to "what, if any, rights had been explained to Defendant and the record reflects that Defendant was never asked whether he wished to waive any of his constitutional rights." *Id*. at 3. Because "the court did not

4

specifically inquire as to whether Defendant was aware that he had the right to [consult with an attorney,] . . . and in neither case was an oral or written waiver of Defendant's Sixth Amendment guarantee of right to counsel taken," Mr. Emerson contends that these convictions should not be used in calculating his criminal history points. *Id.* at 4.

Having presented certified copies of the two docket sheets, the Government contends that, under the authority of *United States v. Unger*, the burden shifts to Mr. Emerson to "establish that the earlier conviction was constitutionally infirm." *Gov't's Mem.* at 1-2 (quoting 915 F.3d 759, 761 (1st Cir. 1990)). The Government argues Mr. Emerson has not met this burden. First, the Government contends that an "ambiguity of the record does not result in a finding that a conviction is constitutionally infirm." *Gov't's Mem.* at 3. Because a "presumption of regularity" attaches to final judgments, the Government states that a defendant can only overcome the presumption with affirmative evidence and "may not simply point to a silent or ambiguous record." *Id*. at 2. Here, the Government argues that the state docket sheets satisfy the Government's initial burden and Mr. Emerson cannot overcome the ensuing presumption of regularity. *Id.* at 3.

Second, the Government contends that Mr. Emerson was in fact "represented by counsel on both occasions." *Gov't's Mem.* at 3. Citing to the October 7, 2003 transcript, the Government argues that "Attorney Harrington interacted with the Court on behalf of the defendant." *Id*. Turning to the March 12, 2008 proceeding, the Government argues that "Attorney Shehan not only interacted with the Court during his representation of the defendant, but he also engaged in plea discussions with the State." *Id*. (citing *Tr. of Mar. 12, 2008* 2:22-23). The Government points out that Mr. Emerson also conferred with Mr. Shehan during the proceedings. *Gov't's Mem..* at 3-4 (citing *Tr. of Mar. 12, 2008* 3:5, 7, 19). Because Mr.

Emerson in fact had counsel for both convictions, the Government concludes that there can be no irregularity in the Court's instructions. *Gov't's Mem.* at 3-4.

### B. Legal Standard

In general, a criminal defendant in a federal sentencing proceeding has no right to collaterally attack prior convictions. *Custis v. United States*, 511 U.S. 485, 487 (1994); *United States v. Cordero*, 42 F.3d 697, 701 (1st Cir. 1994) (same); U.S.S.G. § 4A1.2 cmt. n. 6 (counting all prior convictions that fall within the relevant provisions of the sentencing guidelines for purposes of computing a defendant's criminal history score). The "sole exception" is for "convictions obtained in violation of the right to counsel." *Custis*, 511 U.S. at 487; *Cordero*, 42 F.3d at 701 (same). Although the Sentencing Guidelines do not explicitly accord defendants this right, the First Circuit has interpreted the Sixth and Fourteenth Amendments to require that "a conviction later determined to be [constitutionally] invalid [because of this infirmity] cannot ordinarily be used to determine a future sentence." *United States v. Gray*, 177 F.3d 86, 89 (1st Cir. 1999). Thus, in *Gray*, the First Circuit explained that "a defendant would be entitled to exclude an uncounseled misdemeanor conviction resulting in prison time." *Id.* at 90.

The Sixth Amendment right to counsel for a defendant who faces incarceration attaches at "all critical stages of the criminal process," including the entry of a guilty plea. *United States v. Bates*, No. CR-05-95-B-W, 2006 WL 3210434, at *3 (D. Me. Nov. 6, 2006) (quoting *United States v. Frechette*, 456 F.3d 1, 12 (1st Cir. 2006)). The right to counsel may be waived, but waiver by the defendant must be done both "knowingly" and "intelligently." *Frechette*, 456 F.3d at 12.

A "presumption of regularity" attaches to a final judgment, "even when the question is waiver of constitutional rights." *Parke v. Raley*, 506 U.S. 20, 29-30 (1992) (citing *Johnson v.*

*Zerbst*, 304 U.S. 458, 464, 468 (1938)); *United States v. Sanchez*, 354 F.3d 70, 82 (1st Cir. 2004) (same). The government bears the initial burden to establish the fact of the prior conviction if it wishes to include the conviction in the defendant's criminal history score. *Unger*, 915 F.2d at 761. Once the government establishes the fact of a prior conviction, "[t]he burden then shifts to the defendant to establish that the earlier conviction was constitutionally infirm . . . or otherwise ineligible to be the basis for an upward adjustment." *Gray*, 177 F.3d at 89 (1st Cir. 1999) (quoting *Unger*, 915 F.2d at 761). Defendants must meet their burden by a preponderance of the evidence. *Cordero*, 42 F.3d at 702.

      C.      **The Sixth Amendment and Mr. Emerson**

            1.      **Mr. Emerson Was Represented By Counsel**

To begin, the Court rejects Mr. Emerson's premise that he was not represented by counsel during the 2003 and 2008 criminal proceedings. Even though the docket sheets for the proceedings list Mr. Emerson as *pro se*, the transcripts unequivocally reveal that he was in fact represented by counsel.

According to the October 7, 2003 transcript, Justice Nivison first said, "Jeffrey Emerson. Is Mr. Harrington - - has he spoken to these individuals? Would you get him please?" *Tr. of Oct. 7, 2003* 2:4-5. An unidentified voice responds: "Yes, I believe he has spoken to them." *Id.* 2:6-7. The Court then addresses Mr. Emerson: "Mr. Emerson, do you understand the rights that were explained to you?" *Id.* 2:8-9, 14-15.[4] Mr. Emerson confirms that he does. *Id.* 2:16. When

---

[4] Mr. Emerson contends that this inquiry was insufficient on its face because "it is unclear what, if any, rights had been explained to the Defendant and the record reflects that Defendant was never asked whether he wished to waive any of his constitutional rights." *Def.'s Mem.* at 3. The portion of the transcript that Mr. Emerson has made available to the Court conveys a sense of entering the middle of a conversation.
     It would not be unusual for a district judge to bring all defendants into the courtroom at the beginning of the session and explain to all of them the panoply of legal rights to which they are entitled, including the right to counsel, rather than to do so individually. Typically, the Court would then break to allow the defendants to obtain and consult with appointed counsel, sometimes a lawyer for the day. Once a disposition has been agreed to, the defendant would return to the courtroom and the Judge would remind the defendant about the earlier colloquy. This

the Court asks Mr. Emerson how he wishes to plead, Mr. Emerson says something indiscernible and the Court begins to enter a not guilty plea. *Id.* 3:7-9. At this point, John Harrington, Esq. says: "it's not my understanding, Judge" and clarifies that Mr. Emerson was going to enter a plea of guilty. *Id.* 3:13-19. Mr. Harrington further discusses the sentence, the payment of a victims' fee, and his release. *Id.* 3:21-4:11. On the cover sheet of the transcript, John Harrington, Esq. is listed as counsel for the Defendant. Based on the transcript, the Court readily concludes that Attorney Harrington actually represented Mr. Emerson during the October 7, 2003 proceeding before Justice Nivison.

The cover sheet of the transcript of the March 12, 2008 proceeding lists Thomas Shehan, Esq. as having entered his appearance as "Lawyer of the Day." *Tr. of Mar. 12, 2008* 1. During the proceeding, Mr. Emerson says that he has had a chance to talk his plea agreement over with Attorney Shehan, and Attorney Shehan interjects on behalf of the defendant during the plea negotiations. *Id.* 3:1-14. There are also indications of attorney-client conferences. *Id.* 3:5, 7, 19 (describing how "Attorney-client confer[ed]"). Again, the Court readily finds from the transcript that Mr. Shehan actually represented Mr. Emerson during the March 12, 2008 proceeding before Judge Patricia G. Worth.

Mr. Emerson's claim that his convictions were uncounseled because he was not informed of his right to counsel at either proceeding rings hollow because he was in fact represented by an attorney each time. In fact, during both proceedings it is apparent that local attorneys were addressing the court on his behalf and were discussing his plea and sentence with the presiding

---

may well have happened here. At the very least, the question and response suggest that both Judge Nivison and Mr. Emerson were privy to a discussion about Mr. Emerson's rights that has not been shared with the Court. Left with what appears to be a truncated record, the Court will not assume irregularity in the portion that has not been provided. *Cordero*, 42 F.3d at 701-02 (explaining that "the law will presume, in this context, that a conviction was counseled absent specific evidence to the contrary."). Finally, Mr. Emerson specifically complains that he was deprived of only one constitutional right, the right to counsel, and the Court has found that he was in fact represented by an attorney on both occasions.

judges. On this record, it is difficult to understand why Mr. Emerson is contending he was not represented.

### 2. Mr. Emerson Has Failed to Meet His Burden of Proof

Although the fact of attorney representation seems clear from the transcript of each proceeding, in excess of caution the Court addresses whether, assuming the record is ambiguous, Mr. Emerson has sustained his burden to demonstrate irregularity in the proceedings. The Court concludes that Mr. Emerson has not shown that either conviction is constitutionally infirm. The Court accepts the docket sheets as meeting the Government's initial burden to demonstrate the convictions; under First Circuit law, the burden then shifts to Mr. Emerson to defeat the "presumption of regularity." *United States v. Barbour*, 393 F.3d 82, 93 (1st Cir. 2004) (describing the Government's initial burden as "modest" and stating it can be met by the PSR).[5]

Mr. Emerson's lone argument for constitutional infirmity is that he might not have been apprised of his Sixth Amendment rights. In the First Circuit, however, an inconclusive record does not meet the defendant's burden. *Cordero*, 42 F.3d at 701-02 (explaining that "the law will presume, in this context, that a conviction was counseled absent specific evidence to the contrary."). In *Cordero*, the defendant challenged a prior conviction on Sixth Amendment grounds by claiming that "the government had failed affirmatively to establish that a lawyer's services had been made available to him." *Id*. at 701. The *Cordero* Court found it significant

---

[5] Under 15 M.R.S.A. § 1092, a violation of a condition of release is either a Class E or Class C crime. 15 M.R.S.A. § 1092(1)(A), (B). For both the 2003 and 2008 convictions, the dockets reflect that Mr. Emerson was charged with Class E crimes and, on each occasion, he spent time in jail. Maine Rule of Criminal Procedure 44(a)(1) provides that:
> If a defendant in a proceeding in which the crime charged is a Class D or Class E crime appears without counsel, the court shall advise the defendant of the defendant's right to counsel and shall assign counsel to represent the defendant unless the defendant elects to proceed without counsel or has sufficient means to employ counsel or unless the court concludes that in the event of conviction a sentence of imprisonment will not be imposed.

M.R. Crim. P. 44(a)(1).

that "Cordero - - who had personal knowledge of what transpired in 1987 - - did not offer any testimony to show that he was, in fact, denied the help of an attorney." *Id.* The First Circuit concluded that the defendant had not met his burden to show by a preponderance of the evidence that "he was deprived of counsel at a critical time." *Id.* The Court explained that "a defendant who desires to challenge a prior conviction on Sixth Amendment grounds must do more than merely speculate about theoretical possibilities." *Id.* at 702.

Like the defendant in *Cordero*, Mr. Emerson does not contend that he was never advised of, or that he never waived, his right to counsel. Significantly, like *Cordero*, he has neither filed a sworn affidavit nor moved for an evidentiary hearing to affirmatively assert that he was not informed of his right to counsel. *Cf. Cordero*, 42 F.3d at 701 (noting that the defendant submitted no evidence, nor did he testify "or otherwise swear, that he was deprived of counsel at a critical time"); *Bates*, 2006 WL 3210434, at *2 (describing how the defendant testified at an evidentiary hearing on the issue). Instead, Mr. Emerson acknowledges the possibility that he "was adequately advised of his rights by the attorney of the day." *Def.'s Mem.* at 3. Although Mr. Emerson goes on to argue that "to conclude that he was would be mere speculation," his argument attempts to reverse the presumption. *Id.* Once the Government has produced satisfactory evidence of the prior convictions, the burden rests on Mr. Emerson to prove irregularity, not the government to prove regularity.

Because Mr. Emerson himself concedes that the record at best reveals an equal chance of regularity as irregularity, he has not met his burden by a preponderance of the evidence. Further, the Court's review of the transcripts for both the 2003 and 2008 proceedings establishes unequivocally that Mr. Emerson was in fact represented by an attorney on both occasions.

### III. CONCLUSION

The Court concludes that Mr. Emerson was in fact represented by counsel during court proceedings for both the 2003 and 2008 misdemeanor convictions at issue. To the extent the record is ambiguous, the Court concludes that the Government met its initial burden to establish the fact of the two contested misdemeanor convictions and that Jeffrey Emerson has not met his burden to demonstrate his prior convictions were constitutionally infirm. At sentencing, the Court will consider all four of Mr. Emerson's state conviction for purposes of calculating his criminal history points.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of June, 2010